## Supreme Court— General Term—Fourth Department.

*January,* 1885.

## PEOPLE *v.* McCALLAM.

LARCENY.—EVIDENCE.—JUDGE'S CHARGE.—CONFESSION UNDER § 395 CODE CRIM. PROC.—TRIAL.

Upon the trial of an indictment for larceny in the first degree, the larceny by some one was proven by uncontroverted evidence ; it also appeared that defendant alone knew, from complainant's wife, of the possession of the money by her husband, and that it was kept in a trunk under the lounge ; that from the time it was last seen in complainant's house till it disappeared, defendant was the only person known to be in the house, and the evidence tended to show that no one else could have been there ; that while defendant was in the house there was a period of fifteen minutes when she was alone and could have removed the trunk ; that she lived two or three rods from complainant; that while in complainant's house alone and in the dark she opened the door for the ostensible purpose of carrying out a bedstead; that four $5 gold coins of the kind stolen were afterwards found concealed in defendant's outhouse; and that tracks cor-

responding in size to the feet of defendant and her daughter were found leading from the house to the place where the trunk was discovered broken open and rifled. *Held,* that these facts, with others of minor importance corroborative thereof, called for a submission to the jury, and that a verdict of guilty could not be disturbed.

Defendant has no right, at the close of the people's case, to demand that the court rule upon abstract propositions of law as applicable to the case, there being no motion or application before the court calling for an expression of opinion thereon, and such request should be refused.

After the case has been properly submitted to the jury, the court cannot be called upon again to repeat in different words, or to pass upon abstract or theoretical questions.

A declaration made by one accused of a crime denying any criminal act and explaining to her own advantage, a suspicious circumstance,— *e. g.,* the existence of foot tracks,—is not to be deemed a confession under section 395 *Code Crim. Proc..*

A statement by a police officer to the prisoner, after she knew that she was suspected of the crime, that "they had found enough to convict her, and she might as well own up," is not a threat within the meaning of section 395, *Code Crim. Proc.* Said section has not changed the common law rule in favor of one charged with crime.

Where the testimony of one of the witnesses for the prosecution is drawn out by defendant upon cross-examination, and is upon a collateral matter and hearsay, the defendant may not be permitted to contradict or question it.

Where it is theory of the prosecution that defendant and her daughter carried the trunk containing the property which was stolen, to the place where it was found broken open and rifled, it is competent to prove that the shoe of the daughter was of a size to make one of the tracks leading from defendant's house to the place where said trunk was found.

After a full and fair charge, the jury having been told that they must convict or acquit upon the impressions arising from the whole evidence, and if a reasonable doubt existed, defendant must be acquitted, defendant has no right to demand that the court charge that a particular portion of the evidence may be true and the defendant still not be guilty, or that the jury ought not to convict if they do not believe certain parts of the evidence.*

A charge submitting to the jury the conflicting evidence of the police officers and defendant with the influences and motives surrounding them ; a charge permitting a verdict of larceny in the first or second degree, or petit larceny; a refusal to charge that the evidence of the

---

* See People *v.* Kelly, *ante,* p. 35.

commission of the larceny was presumptive only; and the submission to the jury of the evidence touching the identification of the coins found, and defendant's possession thereof, —considered and approved by the court.

APPEAL by defendant, Helen McCallam, from a judgment of the court of Sessions of Jefferson county, convicting her of the crime of grand larceny in the second degree, and sentencing her to imprisonment at hard labor in the Onondaga penitentiary for three years and six months.

The indictment was found at the Jefferson county Oyer and Terminer held in December, 1883, and charged defendant with grand larceny in the first degree, in stealing from one David Hennessey, a trunk containing $540 in money. The defendant, upon being arraigned, pleaded not guilty. The indictment was sent to the court of Sessions, and was there tried in February, 1884, before Hon. CHARLES H. WALTS, County Judge, with associates, and a jury, who found the defendant guilty of grand larceny in the second degree.

The facts were as follows: Hennessey was an Irish laborer working for the Rome, Watertown & Ogdensburg Railroad. He lived on Cedar street, in the city of Watertown, alone with his wife, and the next house to defendant, there being no fence between the houses. On the morning of October 20, 1883, he had $540 in gold, silver and paper currency in an old trunk under a lounge in his kitchen. He had been accumulating this money for several years, it being what he had saved out of his monthly pay. He saw the money in the trunk on October 16, on which occasion he put $20 in it which he had saved from his wages. He carried the only key to the trunk. Neither he nor his wife took out any money after October 16. Hennessey had kept secret the fact that he had this money, and never told any one about it. His wife never told any one about it except defendant. She had informed defendant before this, that her husband had this money and kept it in a trunk under the lounge. Hennessey's wife saw the trunk Saturday morning, October 20. She was home all that week, except about an hour, on either Friday or Saturday afternoon, she was unable to say which, when she went after some groceries. She re-

membered that the windows were all fastened down, back door bolted and buttoned, and both inside and outside front doors locked when she left the house on this occasion. She returned in about an hour, and found the house just as she left it. With this possible exception, she was not out of the house on that Saturday, and no person was there that day. The defendant was living with a man by name of Butterfield, as his wife, in the next house, but was not married. She also had a daughter, Angelina Quinn, who was at home with her that Saturday all day and into the evening. Saturday evening, October 20, was dark and windy, and while Mrs. Hennessey was sitting alone in her house with the doors fastened, her husband being absent, the defendant came and rapped ; Mrs. Hennessey let her in. She sat down without making any errand. Mrs. Hennessey asked her if she had come to get some yeast, as she had been in the habit of getting yeast of her. Defendant answered that she would take some yeast, but her object in coming over was to get an old bedstead up stairs which she had talked of buying of Mrs. Hennessey, and that she wanted to get it that night so as to varnish it the next day. The defendant then went back to her house after a dish for the yeast, Mrs. Hennessey hooking the door as she went out. Mrs. Hennessey, while defendant was gone, got the yeast down cellar, and came up, let defendant in the house, and again hooked the outside door. Mrs. Hennessey then took the lamp and went up stairs for the bedstead, and was up there about fifteen minutes, leaving defendant down stairs in the dark all of this time. The bedstead was back from the head of the stairs under the eaves, and Mrs. Hennessey handed it down to defendant at the foot of the stairs. The defendant was not at the foot of the stairs all the while, and on one occasion Mrs. Hennessey, who was at the head of the stairs, had to wait for her some few minutes to come from the kitchen to the stairway. When Mrs. Hennessey came down stairs she found her front door was open and defendant was carrying the bedstead out. The defendant carried it over to her house and set it up out doors. Mrs. Hennessey locked the door when defendant left, and kept it locked till Hennessey came, when she let him in, fastened the house and went to bed. Hennessey and his wife found things

as they were left the night before, when they got up Sunday morning, and one of them was in the house all the time Sunday, until the trunk was found near the railroad track. Sunday afternoon a trunk was found about thirty rods back of defendant's house by the side of the railroad track, with the bottom broken open, thrown among some weeds. Several old papers and other articles were found in it, and loose among these things was found $3.75 in silver quarters. On investigation this trunk was found to be the one Hennessey had kept under the lounge with his money in. There had been a rain-storm October 19, and on a search warrant being procured, and executed by officers of the police, on Monday, October 22, it was discovered there were a woman's tracks along the banking on the north end of the Hennessey house leading back towards the railroad. After leaving the banking the ground was hard and covered with leaves so that traces of the tracks were lost. The ground back of defendant's house for about thirty feet towards the railroad was hard and sodded, after which it was plowed up to the track. Where this plowed land commenced two tracks were found leading up to the railroad track, and in a direct line from the defendant's house to the place where the trunk was found. These tracks were parallel and about four feet apart. The same tracks were found leading back from the railroad towards defendant's house, but were not a uniform distance apart, and at places they commingled. On measurements being made, it was found that the shoes of Angelina Quinn fitted the tracks along side of the Hennessey house, and that the shoes of defendant and Angelina exactly fitted the two tracks which run parallel with each other to the railroad track and returned the same way. Hennessey had in the trunk, among the rest of the money, four five-dollar gold pieces, and no more of that denomination, three of which were paid to him at his February pay-day, and one at his March pay-day, 1883. On making a search of defendant's house on Monday, October 22, an old tin can was found in her woodhouse, pushed back in a hole under the floor, containing a piece of paper in which were found four bright five-dollar gold pieces, three of which were minted in 1880, one in 1883. On further examination it was found that the piece of paper which was wrapped around these

gold pieces had been torn from an issue of the *Watertown Times*, dated July 13, 1883, and a part of the paper it was so torn off from was found on a shelf in defendant's kitchen, and another portion was found wrapped around a dish in her wood-shed. On the attention of defendant being called to this money being found as it was, she denied any knowledge of whose it was or how it came there. On her attention being called to the tracks, she stated they were made by herself and daughter Angelina, Saturday evening, October 20, while carrying wash-ing home to Mrs. Fox and Mrs. Hardiman. Both Mrs. Fox and Mrs. Hardiman testified that on that Saturday their clothes were brought home by Angelina Quinn and the man Butter-field ; and Angelina, upon being inquired of before seeing her mother, stated that she and Butterfield carried the clothes to Mrs. Fox and Mrs. Hardiman that night, that they did not cross the lot back of defendant's house, but went around the street. It further appeared that the bedstead defendant got that night of Mrs. Hennessey had not been varnished.

On the trial, after the people had rested, and a motion for defendant's discharge had been made and denied, defendant's counsel requested the court to charge certain abstract proposi-tions of law, no motion or application then being before the court, all of which questions the court refused to rule upon at that stage of the case, and reserved until the evidence on both sides was in ; to which exception was taken by defendant's counsel.

The court, when the case was closed, charged the jury in regard to the testimony of the police officers who executed the search warrant, as follows (folio 389) : " You have the evidence upon the part of the people, given by these offi-cers telling you what they saw and what they said and what was done, and it is for you to determine whether or not these officers have any motives beyond the single, sole de-sire to tell the truth. It is for you to say whether, on the other hand, you believe the evidence given on the part of this defendant and disbelieve the officers. Put one by the side of the other, and say which has the greater motive to testify falsely ; the officers, or the defendant and her witnesses." No objection appears to have been taken thereto, but the court was asked by defendant's counsel to charge, " that all the evidence

given by the officers may be true, and the defendant still not guilty of the crime charged in the indictment,"—which was refused, and an exception taken.

The court also charged that the jury might under the indictment find the defendant guilty either of larceny in the first or second degree, or of petit larceny, and defined the limits as to amount, etc., constituting said crimes.  Defendant's counsel excepted severally to the portions of the charge permitting the jury to find her guilty of larceny in the second degree and petit larceny.

Defendant's counsel requested the court to charge, among others, the following propositions :

" That the evidence of the commission of the larceny is presumptive only."

" Also that there is no evidence in this case that the four gold $5 coins found in the tin box are the coins of Hennessey."

" Also that there is no evidence in this case that the defendant was in the exclusive or conscious possession of the alleged stolen property."

Each of these requests the court refused, and exceptions were duly taken.

The exceptions relating to the admission and rejection of evidence are fully set forth in the opinion.

*Watson M. Rogers* and *Francis N. Fisk,* for the prisoner, appellant.

*E. C. Emerson,* district-attorney, for the people, respondent.

BOARDMAN, J.—The defendant appeals from a conviction at the Jefferson county Sessions of the crime of grand larceny in the second degree under an indictment for grand larceny in the first degree.  Was there evidence in the case to justify the conviction ?  A reading of the case satisfies us there was enough. The fact of larceny by some one is proved, and not controverted by any evidence.  The defendant alone knew from Hennessey's wife of the possession of the money by Hennessey and that it was kept in the trunk under the lounge.  From the time the trunk was last seen in Hennessey's house until it disappeared,

defendant was the only person known to be in the house, and the evidence tends to show that no other person could have been in the house. While defendant was in the house there was a period of about fifteen minutes in the night-time when she was alone and could have removed the trunk without notice. She lived next door to complainant and within two or three rods. She unfastened and opened the door of Hennessey's house while she was alone there and in the dark for the ostensible purpose of carrying out a bedstead. The finding of four $5 gold coins concealed in defendant's wood-shed, of the same kind with those stolen, and the tracks of defendant and her daughter leading towards the place where the trunk was found broken open and rifled, with other circumstances of less importance, make up a body of evidence against the defendant fully justifying a submission of the same to a jury, and its verdict should be conclusive upon the facts.

The defendant's counsel, at the close of the people's case, requested the court to hold certain abstract propositions of law as applicable to the case. The court at that stage of the case declined to pass upon the questions and reserved them for further consideration at the close of the case. Such decision was proper and wise. Any other course would lead to an obnoxious and dangerous system of committing a court to the expressions of opinions as to the law of the case before the facts were produced in evidence. No motion or application was then before the court calling for an expression of an opinion upon the propositions presented by the counsel for the defendant.

After the defendant knew she was suspected of the crime she was told by Guest, one of the officers, that "they had found enough to convict her; she might as well own up." Sometime afterward, and during the same interview, in a conversation between defendant and Champlin, another officer, the tracks leading back from defendant's house toward the railroad were talked about, and the defendant's declaration that "she and her daughter made them carrying clothes to Fox and Hardiman, Saturday night" (the night of the larceny), were admitted in evidence. This is claimed to be erroneous as evidence of a confession made under the influence of fear produced by threats. *Code Crim. Proc.* § 395. This section has not

changed the rule of the common law in favor of one charged with crime. We think there are two answers to this objection. 1st. The declaration proved is not a confession. 2nd. It was admissible under the decisions touching confessions. First, the declarations of the defendant as proved are not acknowledgments of guilt or of a criminal act. They are not made against her own interest. Confessions have force against a prisoner because of the presumption that he will not lie to his own disadvantage. Here were the tracks made by defendant and her daughter. She says they were made when they were carrying clothes. This comes within no definition of a confession. See *Bouvier, Webster,* &c. It is simply a declaration made by one accused of a crime, denying any criminal act and explaining suspicious circumstances for her own advantage. But secondly ; if such declarations be adjudged to be confessions, under the facts proved, they were admissible in evidence against the defendant as used in this case. The language used was not a threat. The same language in substance was used in Wentz' case, 37 *N. Y.* 304, to wit, "He was in a bad fix and had got caught at last." The prisoner then confessed his guilt, and the evidence was held competent. Such a confession was held to be " wholly voluntary and made uninfluenced by any threat, menace, promise or other influence." There is nothing from which it can be inferred that the statements were influenced by fear. They may have been dishonest and untrue. But they were the deliberate and voluntary statements of the accused in her own interest.

The evidence stricken out at folio 240, was incompetent.* The defendant could offer such evidence only by way of contradiction of Champlin. It did not contradict him. It was the same with his evidence. Besides, Champlin's testimony on this subject was drawn out by the defendant on cross-examination, and, being upon a collateral matter and hearsay, the defendant

---

* This evidence was given by defendant on her direct examination, and was to the effect that one Champlin (a police officer who searched the premises of defendant, and who was one of the people's witnesses), had told defendant that her version of what occurred on Saturday night between her and Mrs. Hennessy, was just as Mrs. Hennessy gave it to him. Champlin in his cross-examination had previously admitted that he said this to defendant.—REPORTERS.

will not be permitted to contradict or question it. Besides, no harm could possibly come from striking out what had already been proved by one of the witnesses for the people.

It was competent to prove that the shoe of Angelina Quinn was of a size to make one of the tracks leading from defendant's house towards the place where the trunk was found rifled. It tended to sustain the theory of the prosecution that defendant and her daughter carried the trunk to the place where it was broken open.

The charge of the learned judge was eminently fair toward the defendant. The case was presented to the jury clearly and without error to the prejudice of the prisoner. Indeed, if there were errors, they were in her favor, and her rights were cautiously emphasized and repeated.

Hence, very little respect is due to the score or two of requests to charge, which are without merit. They are mostly demands that the court shall express its opinion upon a given or imaginary state of facts isolated from the whole case. They were better adapted to confuse and trip a court than to serve any purpose of justice. Moody v. Osgood, 54 N. Y. 488.

The criticism of the charge at folio 389 is not just. The submission of the conflicting evidence of the police officers and the defendant was strictly accurate. The influences and motives which surrounded them and were likely to influence their testimony, were properly submitted to the jury. Besides, I find no exception to this part of the charge. A request, however, was made to charge "that all the evidence given by the officers might be true and the defendant still not guilty of the crime charged," which was declined. After a full and fair charged such a request was unreasonable and absurd. The counsel has no right to separate particular portions of the evidence and ask the court to hold that such evidence may be true and the defendant still not guilty, that this witness may have testified to the truth, and the defendant still be innocent, or that the jury ought not to convict if they do not believe certain parts of the evidence offered. The jury had been told it must convict or acquit upon the impressions and belief arising from the whole evidence and if a reasonable doubt existed the defendant should be acquitted.

A failure to have charged, upon request, that the defendant might be convicted of grand larceny in the second degree would, in my opinion have been error. In certain inferences that might be drawn from the evidence the defendant was guilty in the second degree only. The defendant insists she was guilty in the first degree, if at all. The jury has found her guilty, and she has not been harmed by a conviction in the second degree, instead of the first degree as she claims she ought to have been, if guilty at all. The Penal Code, section 35, and the Code of Criminal Procedure, section 444, allow of such a conviction for an inferior degree of crime.[*]

The evidence of the commission of the larceny was direct and positive. It excluded any presumption of innocent removal. It was not, therefore, a case of proof of a larceny by presumption only, as defendant's counsel seems to suppose. The court was right in so holding.

The evidence touching the identification of the coins found with those stolen, and the possession of the same by the defendant was properly submitted to the jury. They were not questions calling for a legal decision.

The seventh request to charge was abundantly covered by the charge as made. If it were doubtful from the evidence whether the defendant or some third person stole the money, the jury was instructed to acquit.

The twenty-fourth request to charge was hypothetical and the evidence would not justify the request made. The question presented was for the jury only, and not for the court.

These are all the considerations urged upon us by the defendant why this conviction should not stand. We not believe any of them are well founded. The case was carefully tried and an eminently fair charge given to the jury. At the close of such charge, apparently, some twenty-seven requests to charge were made by defendant's counsel. Some of them were charged and some refused. All of them were ingenious and plausible. But, as a rule, they sought the opinion of the court upon the weight of facts, or inferences to be drawn therefrom, or opinions upon abstract questions of the law, having no foundation in the evidence. So far as opinions upon facts were

---

[*] See People v. McTameney, 1 N. Y. Crim. 437.

asked for, the questions had been properly submitted to the jury and the requests were properly denied. The law also had been given to the jury, and the court was not called upon again to repeat in different words or to pass upon abstract or theoretical questions not in the case or not justified by the facts. We think the conviction and judgment must be affirmed.

HARDIN, P. J., and FOLLETT, J., concur.